UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,
v.                                                                          Case No. 22-20086
                                                                   Honorable Victoria A. Roberts
KENNETH MOSS, JR.,

    Defendant.
_____/

## ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS EVIDENCE FOLLOWING ILLEGAL ARREST [ECF No. 20]

### I.   INTRODUCTION

Kenneth Moss filed a "Motion to Suppress Evidence Following Illegal Arrest". In actuality, the most pertinent events occurred before the Detroit Police Department ("DPD") arrested him. Indeed, at the evidentiary hearing Moss concedes that the focus of the Court's analysis needs to be the initial contact, not the subsequent arrest and search.

DPD had reasonable suspicion to initiate a lawful *Terry* stop. The stop morphed into probable cause to lawfully arrest and search Moss on a gun charge. DPD did not violate his constitutional rights. The Court **DENIES** the motion.

1

II. BACKGROUND

Moss is charged by Indictment with one Count of Felon in Possession of a Firearm and one Count of Possession with Intent to Distribute a Controlled Substance (Crack Cocaine). These charges stem from events in the early morning of March 16, 2020. At 1:34 A.M. that morning, a 911 caller reported a man chasing a woman down the street with a gun. The caller described the man as black, medium complexion, approximately six feet tall, wearing a blue shirt, and armed with a firearm. A DPD dispatcher relayed this information through a be on the lookout ("BOLO") alert. Around 1:41 A.M., DPD officers Thomas Hogan, Devon Birrell, and Daniel Sharkey responded to the alert and headed to the 19000 block of Riopelle Street to investigate. They arrived around 1:43 A.M.

Upon arrival, Sharkey heard shouting to his south. He continued in the direction of the shouting and came upon Moss, who fit the description of the man described in the 911 call. Moss was also the only person on that block of Riopelle Street. Once Moss saw the patrol car, he crossed the street, looking in the direction of the officers and grabbing his waistband. Sharkey testified that he feared Moss was armed, given the nature of the call and the positioning of his hand, so he pointed his pistol at Moss and asked what he was doing. Moss said, "I'm running." He did exactly that.

Birrell and Hogan exited the patrol car and pursued Moss on foot. After he fell on his own, the officers got on top of Moss but struggled to subdue him. Hogan grabbed his legs and saw a silver gun fall from either Moss's pocket or his waistband. Hogan yelled "gun, gun, gun." He told Sharkey where the gun landed, which was just to the left of Hogan. Sharkey retrieved and secured the gun.

Moss admitted he did not have a concealed pistol license and had just gotten into an argument with his girlfriend. Because Moss did not have a license to carry, officers arrested him on a firearm charge. As the search incident to arrest continued, Hogan discovered a pill bottle containing 21 small baggies of crack cocaine.

### III. ANALYSIS

Moss says officers improperly stopped him, so the Court should suppress all evidence flowing from the *Terry* stop. He says the BOLO described an armed man chasing a woman, but Moss was not visibly armed and there were no women in the area. Moss says the officers merely connected him to the crime based on the generic physical description in the BOLO. Moss also argues that he has a distinctive hairstyle and beard, and because those things were not in the BOLO, officers should not have suspected him of wrongdoing.

The government says the police officers conducted a valid *Terry* stop. It points to several reasons why DPD officers suspected Moss was engaged in criminal activity; (1) officers arrived on the scene so quickly after the 911 caller reported the activity that Moss would not have had time to leave the area; (2) when officers got to the scene they saw Moss who matched most of the description of the suspect in the BOLO and was the only person in the area; (3) Moss changed directions when the patrol car arrived; (4) Moss gripped his waistband during his interaction with Sharkey—a potential sign that he was armed, and; (5) Moss ran when Sharkey asked him what he was doing.

The Fourth Amendment prohibits "unreasonable searches and seizures" by the government. U.S. Const. Amend. IV; *United States v. Smith*, 594 F.3d 530, 535 (6th Cir. 2010). Fourth Amendment protections "extend to brief investigatory stops that fall short of traditional arrest." *United States v. Damitres Ward*, No. 18-3034, 2018 WL 6181644 at *3 (E.D. Mich. Nov. 27, 2018) (citing *Terry v. Ohio*, 392 U.S. 1, 19 (1968)).

These brief investigatory "*Terry*" stops will comply with the Fourth Amendment "where the [investigating] 'officer has reasonable, articulable suspicion that [a] person has been, is, or is about to be engaged in criminal

activity'." *Smith*, 594 F.3d at 536 (citing *United States v. Atchley*, 474 F.3d 840, 847 (6th Cir. 2007)).

The detaining officer "must be 'able to articulate some minimal level of objective justification for making the stop,' based upon 'specific reasonable inferences which he is entitled to draw from the facts in light of his experience.'" *Id*. at 537 (quoting *United States v. Foster*, 376 F.3d 577, 585 (6th Cir. 2004)). Absent reasonable suspicion, a *Terry* stop is unconstitutional, and any evidence obtained must be suppressed. *United States v. Jones,* 562 F.3d 768, 773 (6th Cir. 2009).

Reasonable suspicion need not come exclusively from officers' own observations; it can derive from dispatch information, information from other officers, and a defendants conduct. *Dorsey v. Barber*, 517 F.3d 389 (6th Cir. 2008); *United States v. Lindsey*, 114 F. App'x 718, 723 (6th Cir. 2004). Courts must examine the totality of the circumstances surrounding the stop.

The totality of circumstances supports the *Terry* stop. Despite Moss's contention, Sharkey did not rely merely on Moss matching the "generic" descriptions in the BOLO as a basis for stopping him. [ECF No.20, PageID.62]. Sharkey observed Moss's behavior, the surrounding circumstances, and the BOLO to justify the stop. As Sharkey articulates,

5

factors such as the time of day, number of people on the street, officers' response time, Moss's behavior, and the BOLO all were considerations before stopping Moss. Under the totality of circumstances, Sharkey could have formed a reasonable suspicion that Moss was the armed man chasing the woman down Riopelle Street.

Moreover, even if officers relied only on the description in the BOLO, the circumstances support the stop. A reliable description of a suspect may provide a sufficient basis for a *Terry* stop of a person matching that description so long as the description sufficiently "winnow[s] the class of potential suspects." *United States v. Davis*, 341 F. App'x 139, 140–41 (6th Cir. 2009) (quoting *United States v. Powell*, 210 F.3d 373 (table op.), 2000 WL 357262, at *3, 210 F.3d 373 (6th Cir. Mar. 29, 2000)). Whether a description sufficiently narrows the class of suspects depends on the circumstances of the case. *Dorsey* 517 F.3d 389.

In *Dorsey*, an officer initiated a stop of two defendants based on a BOLO that described them as "two black guys, one with cornrows, one in a blue jersey and one wearing a white jersey." *Id*. at 398. The *Dorsey* court acknowledged that the description left much to be desired. However, because the two men were the only black men in a crowd of hundreds, the officer was justified in relying on that description to stop them. The Sixth

Circuit reasoned that under the totality of those circumstances, a seemingly deficient description was enough to establish reasonable suspicion. Moss's case is similar.

Police came upon Moss on a cold night in March. Wearing only a blue shirt and sweatpants, he fit all the physical characteristics described in the BOLO. At about 1:41 A.M., Moss was the only one on a street where a 911 caller had just reported the crime minutes before. Under the circumstances of that night, on the 19000 block of Riopelle Street, dispatch's description was enough to justify the stop, even before Moss interacted with DPD. Moss's conduct and interactions bolstered already reasonable suspicion.

Finally, it is true that the BOLO failed to describe Moss's beard and long hair. However, this Court finds no case law that says a BOLO must describe a suspect perfectly. The critical question is whether the BOLO describes the suspect well enough for an officer to form reasonable suspicion to conduct a *Terry* stop. DPD dispatch's description was enough.

IV. **CONCLUSION**

The Court **DENIES** Moss's motion to suppress evidence from his March 2020 arrest [ECF No. 20].

**IT IS ORDERED**.

                                                s/ Victoria A. Roberts
                                                Victoria A. Roberts
                                                United States District Judge

Dated: January 6, 2023